Filed 1/8/25  Martinez v. Toledo CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CARLOS MARTINEZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE TOLEDO,<br><br>    Defendant and Appellant. | D082818<br><br><br>(Super. Ct. No. 37-2022-00043919-CU-DF-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

The Bronson Firm and Steven M. Bronson for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Jose Toledo appeals the order denying his special motion to strike as a strategic lawsuit against public participation (SLAPP) the complaint Carlos Martinez filed against him for reposting on Instagram an accusation by another Instagram user that Martinez had sexually assaulted her.  The superior court ruled the complaint was not a SLAPP because the reposting

was not made in connection with an issue of public interest, and denied the motion.  We affirm.

BACKGROUND

When Martinez and Aliʻikai Chaplin were in eighth grade, they ate lunch together one day.  According to Chaplin, Martinez began to look at her "oddly" and "then reached for [her] breasts and [her] genitals."  Chaplin called Martinez "a 'creep' " and ran away from him, but she did not report the incident to any adult at the time.

Later, when they attended the same high school, Chaplin learned other students had accused Martinez of sexual assault.  She and other students created "a 'hate page' on Instagram" that "consisted of the story that [Martinez] had sexually assaulted [her]."[1]  According to Martinez, Chaplin recounted the eighth grade incident by posting the following statement on her Instagram account:  " 'During this lunch, [Martinez] became very touchy.  We were having this conversation about I don't know what, then he reached for my tit and my vagina.' "  Toledo was not present during the incident but reposted Chaplin's accusation on his own Instagram account.  A petition was posted on Instagram that urged readers to participate in a protest to remove Martinez from school, and such a protest occurred at the school.[2]  Based on the sexual assault accusations, Martinez was suspended from school.  After an investigation, the school determined the accusations could not be proved

---

[1]  The copy of the "hate page" in the record is of poor quality.  The page contained 10 posts, none of which is legible, and had 44 followers.

[2]  The petition stated:  "We all must come together as a school and a community to have a peaceful protest to remove [Martinez] from our campus making young women and men feel uncomfortable and scared and on edge at school.  A place where you should feel safe and even having a school as a safe haven."  Eleven people signed the petition.

and allowed him to return, but he was not allowed to march at graduation with his classmates.

Martinez sued Chaplin, Toledo, and another defendant for defamation. He alleged that as part of a plan to get him expelled from school, the defendants: (1) created the Instagram " 'hate page' " that contained accusations of sexual assault against him; (2) republished the "lies" on their own accounts; and (3) organized the protest at the school. Martinez prayed for damages and other relief.

Toledo filed a special motion to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16). He argued the complaint fell within the scope of the statute because "this case involves an obvious issue of public importance—sexual assault of a minor—on public forums." Toledo further argued Martinez could not prevail on his defamation claim because federal law (47 U.S.C. § 230) immunizes Internet users from liability for republications of others' defamatory statements and because Chaplin's accusation against Martinez was true. In support of the motion, Toledo submitted a declaration and excerpts of deposition testimony of Chaplin, excerpts of his own deposition testimony, and purported posts on Martinez's Instagram account about national broadcasts of news that police were going to arrest the people who had distributed false information about him.

Martinez opposed the motion. He argued the lawsuit did not involve an issue of public interest within the meaning of the anti-SLAPP statute, because Toledo is not a public figure, the reposting of Chaplin's sexual assault accusation did not affect a large number of people beyond the direct participants, and the reposting was of concern only to the parties to the lawsuit. Martinez also argued his evidence established a probability of prevailing on the defamation claim, and Toledo had presented no admissible

3

evidence in support of his defenses. The superior court's register of actions lists declarations as having been filed as part of Martinez's opposition, but none are included in the clerk's transcript. In his opening brief, Toledo says Martinez submitted a declaration in which he denied he had sexually assaulted Chaplin.

The superior court held a hearing and denied Toledo's motion to strike the complaint. The court ruled Toledo's post of Chaplin's sexual assault accusation against Martinez was not activity protected by the anti-SLAPP statute. The court explained: "As alleged, the focus of the Instagram posts was 'ammunition' for another round of the private controversy between these individuals and not intended to raise public awareness on the topic of sexual assault in schools." "Publication on the Internet does not turn otherwise private information into a matter of public interest."

## DISCUSSION

Toledo contends Martinez's complaint is a SLAPP because it is based on statements he made in a public forum (a Web site accessible to the public) concerning an issue of public interest (sexual assault of a minor at school). Toledo faults the superior court for concluding otherwise by ignoring the cases he cited and citing others he says are distinguishable. Toledo also contends there is no probability Martinez will prevail on the complaint because he (Toledo) is immune from defamation liability under federal law and the statement he reposted was true.

We begin with some general principles regarding anti-SLAPP motions. "The anti-SLAPP statute enables defendants to quickly terminate meritless actions against them that are based on their constitutionally protected rights to speak freely and petition for redress of grievances." (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 147.) To that end, the statute provides: "A cause

4

of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)

Resolution of an anti-SLAPP motion proceeds in two steps. First, a defendant moving to strike a claim must show the conduct underlying the claim is within one of the four categories of protected activity listed in Code of Civil Procedure section 425.16, subdivision (e). (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384, 396; *Bui v. Ngo* (2024) 101 Cal.App.5th 1061, 1071 (*Bui*).) Second, if the defendant makes that showing, the burden shifts to the plaintiff to show the targeted claim is legally sufficient and is supported by evidence that, if credited, would suffice to sustain a judgment for the plaintiff. (*Baral*, at pp. 384, 396; *Bui*, at p. 1071.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; accord, *Bui*, at p. 1071.) We review a superior court's decision at both steps de novo. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250 (*Geiser*); *Bui*, at p. 1071.)

We turn now to whether Toledo's posting on his Instagram account of Chaplin's accusation of sexual assault against Martinez constituted activity protected by the anti-SLAPP statute. Toledo relies on Code of Civil Procedure section 425.16, subdivision (e)(3), which covers "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." A Web site accessible by the

5

public, including an Instagram account, is a public forum within the meaning of the statute. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4; *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1252 (*Jackson*).) Not every Web site post involves an issue of public interest, however. Mere publication on a Web site should not turn otherwise private information into a matter of public interest. (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226 (*D.C.*).) The appeal thus turns on whether Martinez's Instagram post was made "in connection with an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(3).)

Our Supreme Court has prescribed a two-step analysis for deciding whether speech has the requisite connection to an issue of public interest to qualify for anti-SLAPP statute protection. First, the court must determine whether the content of the speech, considered in its context, may reasonably be understood to implicate an issue of public interest even if the speech also implicates a private dispute. (*Geiser, supra*, 13 Cal.5th at p. 1253; *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*).) Factors relevant to deciding whether speech concerns an issue of public interest include whether the speech: (1) involves a person or entity in the public eye; (2) is about conduct that could affect a substantial number of people beyond the direct participants; (3) is on a topic that has been the subject of extensive media coverage or is of widespread interest; or (4) concerns private conduct that affects a community in a way similar to that of a governmental entity. (*Geiser*, at p. 1248; *FilmOn*, at pp. 145–146; *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 (*Rand*).) Second, the court must determine whether the speech contributed to the public conversation about the issue. (*Geiser*, at p. 1249; *FilmOn*, at pp. 149–150.) After considering the context of the speech—including the speaker, audience, purpose, location, and timing (*Geiser*, at p. 1253; *FilmOn*, at pp. 143, 152)—

6

the court must decide whether the defendant "participated in, or furthered, the discourse that makes an issue one of public interest" (*FilmOn*, at p. 151). Hence, to prevail on an anti-SLAPP motion, the defendant "must show not only that [the] speech referred to an issue of public interest, but also that [the] speech contributed to public discussion or resolution of the issue." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 900 (*Wilson*).)[3]

Using this two-step analysis, we first consider the content of the speech underlying Martinez's defamation claim against Toledo. "[T]he focus of our inquiry must be on 'the specific nature of the speech,' rather than on any 'generalities that might be abstracted from it.' " (*FilmOn, supra*, 7 Cal.5th at p. 152.) The allegedly defamatory statement Toledo posted on his Instagram account was Chaplin's accusation that while she and Martinez were having lunch together one day when they were in eighth grade, he "reached for [her] tit and [her] vagina.' " The post concerned two individuals who, as far as the record shows, "had previously received no public attention or media coverage" and thus were not "in the public eye." (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924.) The post was about a single incident between Chaplin and Martinez, not "conduct that could directly affect a large number of people beyond the direct participants." (*Ibid.*) The incident was neither "the subject of extensive media coverage" (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (*Weinberg*)) nor "a topic of widespread, public interest" (*Rivero*, at p. 924). It was "a matter of concern to the speaker and a relatively small,

_____

3　　The two steps are not always analytically distinct. In some cases, the contextual considerations that support the conclusion the speech or conduct at issue implicated an issue of public concern also support the conclusion the speech or conduct furthers public discussion of the issue. (*Geiser, supra*, 13 Cal.5th at p. 1256.)

7

specific audience," i.e., other students who knew Chaplin or Martinez. (*Weinberg*, at p. 1132.) Toledo's post did not concern conduct that "affected a community in a manner similar to that of a governmental entity." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479.) Based on its content, we conclude Toledo's Instagram post did not implicate "an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(3).)

Toledo disagrees with our conclusion and argues the complaint and his anti-SLAPP motion 'involve an obvious issue of public importance—sexual assault of a minor, at school." He says such "serious, criminal allegations" are "of widespread public interest." Although crime in general, and sex crimes against minors at school in particular, may be matters with which the general public is concerned, "the assertion of a broad and amorphous public interest is not sufficient" to trigger the protection of the anti-SLAPP statute. (*Weinberg, supra*, 110 Cal.App.4th at p. 1132.) "[S]imply because a general topic is an issue of public interest, not every statement somewhat related to that subject is also a matter of public interest within the meaning of [the anti-SLAPP statute]." (*Jackson, supra*, 10 Cal.App.5th at p. 1253.) "At a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance. What a court scrutinizing the nature of speech in the anti-SLAPP context must focus on is the speech at hand, rather than the prospects that such speech may conceivably have indirect consequences for an issue of public concern." (*Rand, supra*, 6 Cal.5th at p. 625.)

Nothing in the record indicates the specific sexual assault of which Martinez was accused generated widespread public interest because it involved a serious crime. From all that appears, no criminal charges were filed against Martinez, and Toledo's Instagram post indicates no intent to

8

initiate a criminal investigation or prosecution against him. "The fact that [the post] accuse[s] [Martinez] of criminal conduct make[s] [the post] defamatory on [its] face. (Civ. Code, §§ 45, 45a, 46.) It does not automatically make [the post] a matter of public interest." (*Weinberg, supra*, 110 Cal.App.4th at p. 1135.) "Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made—a result that would be inconsistent with the purpose of the anti-SLAPP statute and would unduly undermine the protection accorded by [provisions of the Civil Code]." (*Id.* at p. 1136; see *Abuemeira v. Stephens* (2016) 246 Cal.App.4th 1291, 1298 ["Causes of action arising from false allegations of criminal conduct are not subject to the anti-SLAPP laws."].)

Even were we to assume the accusation of sexual assault against Martinez that Toledo posted on his Instagram account was an issue of public interest within the meaning of the anti-SLAPP statute, to prevail on his special motion to strike the complaint Toledo still would have to satisfy the second step of the public interest analysis prescribed by our Supreme Court. That step "ask[s] what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn, supra*, 7 Cal.5th at pp. 149–150.) The anti-SLAPP statute "demands 'some degree of closeness' between the challenged statements and the asserted public interest" in that " 'the statement must in some manner itself contribute to the public debate.' " (*Id.* at p. 150.) Statements "too tenuously tethered to the issues of public interest they implicate, and too remotely connected to the public conversation about those issues," do not fall within the scope of the anti-SLAPP statute. (*Id.* at p. 140.) "[T]o assess whether the

9

challenged activity contributes to discussion of a public issue, we must identify some public issue that the challenged activity purports to address." (*Geiser, supra*,13 Cal.5th at p. 1250.)  Important to that assessment are considerations of the context in which the statement was made, including the speaker, audience, purpose, timing, and location.  (*Id.* at p. 1253; *FilmOn*, at pp. 143, 152.)  As we shall explain, those considerations show Toledo's republication of Chaplin's sexual assault allegation on his own Instagram account did not contribute to any debate on an issue of public interest.

In an apparent attempt to show his Instagram post was made "in connection with an issue of public interest" (Code Civ. Proc., § 425.16, subd. (e)(3)), Toledo points to portions of Martinez's complaint about the spread of Chaplin's sexual assault accusation over the Internet.  Toledo cites allegations that the defendants created a " 'hate page' on Instagram" that included the accusation, that they republished "the lies" on their own accounts, and that the accusation "quickly spread across the [I]nternet in various chatrooms."  The record contains no information on how many Instagram followers, if any, Toledo had or who they were when he posted the accusation; the nature of the discussions, if any, that occurred on his account, on the "hate page" (which had only 44 followers), or in the chatrooms in response to the accusation; how many people, if any, participated in the discussions or who they were; or what any participant wrote.  A high school student's allegedly false accusation of sexual assault against another student does not become a matter of public interest merely by repetition on a third student's Instagram account (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 481; *D.C., supra*, 182 Cal.App.4th at p. 1226) or by communication over the Internet to even a large number of people (*Rand, supra*, 6 Cal.5th at p. 621; *Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624, 633 (*Woodhill*

*Ventures*); *Weinberg, supra*, 110 Cal.App.4th at p. 1133). "The fact that [Toledo] allegedly was able to vilify [Martinez] in the eyes of at least some people establishes only that he was at least partially successful in his campaign of vilification; it does not establish that he was acting on a matter of public interest." (*Weinberg*, at p. 1134.)

As other purported indicators that his Instagram post was made "in connection with an issue of public interest" (Code Civ. Proc., § 425.16, subd. (e)(3)), Toledo cites the allegation of Martinez's complaint that the defendants organized a protest at their school and paragraphs of Chaplin's declaration concerning the protest. According to Chaplin, other students had also accused Martinez of sexual assault; the school did nothing in response to their reports; and the protest was not against Martinez, but to make school officials aware that sexual assault victims should be believed and have access to justice.[4] None of this establishes Toledo's Instagram post contributed to the discussion of an issue of public interest.

In his complaint, Martinez alleged the purpose of the protest at the school was to get him expelled. Supportive of that purpose is the petition posted on Instagram, which encouraged students to "come together . . . to have a peaceful protest to remove [Martinez] from [the] campus." Based on these materials and the defendants' creation of the Instagram "hate page" against Martinez, "a reasonable, objective observer" (*Geiser, supra*,

---

[4] Chaplin stated in her declaration that she did not attend the protest. The record contains no information about whether or not Toledo attended. He did not base his anti-SLAPP motion on participation in the protest, and the superior court stated "its ruling does not address whether the planning and execution of a protest addressing how the high school addresses complaints of sexual assaults would constitute protected conduct." We likewise express no opinion on whether participation in the protest would constitute activity protected by the anti-SLAPP statute.

11

13 Cal.5th at p. 1254) would conclude the republication of Chaplin's allegedly false sexual assault allegation against Martinez on Toledo's personal Instagram account (which likely had a small following of fellow students) "aimed to whip up a crowd for vengeful retribution. [It was] an unprotected effort ' "to gather ammunition" ' in [the defendants'] spat with [Martinez]." (*Woodhill Ventures, supra*, 68 Cal.App.5th at pp. 632–633.) Although Chaplin stated the protest had a different purpose—"to advocate for justice for sexual assault victims"—Toledo's republication of her accusation did not discuss the broader issue of justice for sexual assault victims. His post "did not seek public discussion of anything." (*Id.* at p. 632.) Toledo cannot bring his republication of Chaplin's accusation within the scope of the anti-SLAPP statute by "defining [the] narrow dispute by its slight reference to the broader public issue." (*FilmOn, supra*, 7 Cal.5th at p. 152.) By merely repeating the allegedly false accusation, Toledo neither "participated in, [n]or furthered, the discussion that makes an issue one of public interest." (*Id.* at p. 151.) His Instagram post "added nothing to any public discourse or interest" in justice for sexual assault victims. (*D.C., supra*, 182 Cal.App.4th at p. 1230; accord, *Bernstein v. LaBoeuf* (2019) 43 Cal.App.5th 15, 24 (*Bernstein*).)

As yet another indicator he made his Instagram post "in connection with an issue of public interest" (Code Civ. Proc., § 425.16, subd. (e)(3)), Toledo cites two exhibits attached to his attorney's declaration, which the attorney was "informed and believe[d]" were posts on Martinez's Instagram account. The posts included "a video of a Univision broadcast on [Martinez's] story in which his parents are interviewed," and his associated statement that "[t]his news has been broadcasted in NATIONAL LEVEL!!!!!" These unauthenticated posts are not properly before us. (See *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 ["declarations may not be

12

based upon 'information and belief' and documents submitted without the proper foundation are not to be considered"].)

Even were we to consider the posts and Toledo's attorney's description of them, they would not establish the "functional relationship" Toledo apparently seeks to establish between his repetition of Chaplin's allegedly false accusation of sexual assault against Martinez and a public conversation on an issue of public interest. (*FilmOn, supra*, 7 Cal.5th at pp. 149–150.) Because the Univision broadcast is not included in the record, we do not know the subject matter of the broadcast. Other content in the posts suggests the broadcast concerned a police investigation and impending arrests of persons who had distributed false information about Martinez. That content in turn suggests the broadcast was about justice for those falsely accused of sexual assault, not "justice for sexual assault victims" or the problem of "sexual assault of a minor, at school," the two issues of public interest to which Toledo seeks to connect his Instagram post. If the subject of the Univision broadcast was indeed the problem of false sexual assault accusations, Toledo's republication of Chaplin's allegedly false accusation against Martinez merely exacerbated the problem. It did not "contribute[ ] to public discussion or resolution of the issue." (*Wilson, supra*, 7 Cal.5th at p. 900.) Whether the broadcast was about sexual assaults of minors at school, justice for sexual assault victims, or justice for victims of false sexual assault accusations, any mention of Toledo's Instagram post during the broadcast would not make it a matter of public interest. (See *Rand, supra*, 6 Cal.5th at p. 625 ["fleeting or tangential" connection between speech and issue of public interest does not trigger anti-SLAPP statute protection]; *Bernstein, supra*, 43 Cal.App.5th at p. 24 [dissemination via Internet and television of defendant's accusation plaintiff was racist for refusing to serve

13

defendant at bar did not further public debate about racism and did not make accusation issue of public interest].)

The two cases on which Toledo principally relies, *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138 and *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, do not convince us that his Instagram post was made "in connection with an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(3).) In *Chaker*, we held the defendant's statements "posted to the Ripoff Report Web site about [the plaintiff's] character and business practices" were protected by the anti-SLAPP statute because they "plainly f[e]ll within the rubric of consumer information about [the plaintiff's] business and were intended to serve as a warning to consumers about his trustworthiness." (*Chaker*, at p. 1146.) The republication of Chaplin's allegedly false sexual assault accusation against Martinez on Toledo's personal Instagram account clearly was not "consumer information" about Martinez's trustworthiness in business dealings that would be of interest to potential customers. *Terry* was a defamation action that arose out of a church report of an investigation into a youth group leader's "secretive and inappropriate relationship" with one of the youth group's minor members. (*Terry*, at p. 1548.) The report was discussed at church meetings with concerned parents. (*Id.* at p. 1543.) "[T]he broad topic of the report and the meetings was the protection of children in church youth programs, which is an issue of public interest." (*Id.* at p. 1548.) The report and the meetings contributed to the discussion of that issue by suggesting various ways the church could keep sexual predators away from children. (*Id.* at pp. 1547–1548.) As we explained above, Toledo's Instagram post, which merely repeated Chaplin's allegedly false accusation of sexual assault against Martinez, "added nothing to any public discourse or interest." (*D.C., supra*,

14

182 Cal.App.4th at p. 1230.)  Neither *Chaker* nor *Terry* supports the conclusion that the post "contributed to public discussion or resolution of [an] issue [of public interest]." (*Wilson, supra*, 7 Cal.5th at p. 900.)

For the reasons discussed above, we hold Toledo did not meet his burden to show the Instagram post underlying Martinez's defamation action against him was speech protected by the anti-SLAPP statute.  Consequently, the burden never shifted to Martinez to show a probability of prevailing against Toledo, and we need not, and do not, consider the defenses he raised in the anti-SLAPP motion. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80–81; *White v. Davis* (2023) 87 Cal.App.5th 270, 290.)  The superior court correctly denied the motion at the first step of the anti-SLAPP analysis.

DISPOSITION

The order denying Toledo's anti-SLAPP's motion is affirmed.  Martinez is entitled to costs on appeal.

IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


KELETY, J.

15